## DUNKLEY SURFACING COMPANY, INC. v.
## GEORGE MADSEN CONSTRUCTION COMPANY.

173 N. W. (2d) 420.

January 2, 1970—No. 41630.

*Karlins, Grossman, Karlins, Siegel & Brill, Allen C. Johnson,* and *Richard Siegel,* for appellant.

*Roger A. Johnson,* for respondent.

Heard before Knutson, C. J., and Nelson, Sheran, Peterson, and Frank T. Gallagher, JJ.

PETERSON, JUSTICE.

Plaintiff, Dunkley Surfacing Company, Inc., a subcontractor, agreed to perform excavation and blacktopping at a stated price

for defendant, George Madsen Construction Company, a general contractor, in the construction of a sales and automobile service center for Montgomery Ward & Company in Robbinsdale, Minnesota. A dispute arose between plaintiff and defendant during the course of work on the project, as the result of which plaintiff "walked off" the job without completing performance of the agreement. Plaintiff, claiming that defendant so breached the contract as to make complete performance impossible, sued on a quantum meruit theory for the value of its part performance. Defendant, claiming that it was plaintiff who breached the contract, counterclaimed for damages to cover the costs of completion. Upon trial to the court, judgment was ordered for plaintiff. Defendant moved for a new trial and appeals from the order denying its motion. We affirm.

The trial court found, as it could under the evidence, that defendant breached the agreement by unjustified interference with plaintiff's performance. Plaintiff had promptly commenced performance on September 9, 1965. Almost immediately, however, the weather became adverse: An abnormal amount of rain made it difficult—on some days, impossible—to clear and grade the large construction site. As a result plaintiff fell 2 or 3 weeks behind schedule. Defendant thought that plaintiff should bring in additional equipment and accelerate digging of the foundation of the building before the onset of cold weather. On October 13 defendant directed plaintiff to procure a backhoe for the digging of certain spread footings. Plaintiff did obtain a small backhoe, which arrived at the construction site at 10 a. m. on October 15. At 8 a. m., October 15, Gordon Madsen, defendant's president, observed that no backhoe was on the site, so he immediately rented a backhoe, together with an operator, from a mechanical contractor. He told Roger Dunkley, plaintiff's president, that plaintiff was to be backcharged for the cost of these new arrangements. Madsen at the same time stated to Dunkley that "[a]ny other equipment that I see fit or necessary I will put on the job and back-charge it if you don't have it here." Plaintiff

protested that "we just can't operate under those conditions." Madsen replied, "If that is the way you feel about it, you will have to discontinue it and we will have to operate it in our own manner."

A general contractor who arrogates to itself control over a subcontractor's performance, directing the performance by means other than those contemplated by the subcontractor and backcharging the subcontractor for the cost of such means establishes an intolerable condition making it impossible for the subcontractor to perform according to its agreement. Such conduct is not a slight or casual breach, but a substantial and fundamental breach, for the objective of the parties in making the agreement is effectively defeated.

Where a contract is so materially breached or repudiated, the aggrieved party may consider the contract at an end and sue to recover the reasonable value of his partial performance. Stark v. Magnuson, 212 Minn. 167, 2 N. W. (2d) 814; 5 Corbin, Contracts, § 1109. Plaintiff, as the aggrieved party, was required to give defendant unequivocal notice that it no longer considered their agreement to be in effect. Such notice was given by plaintiff's declaration that it could no longer work under the conditions imposed by defendant and by its conduct in dramatically removing its work crew from the construction site. The fact of notice, moreover, was confirmed when defendant promptly secured a replacement for plaintiff.

Plaintiff's right to recover in quantum meruit is not defeated by defendant's showing that it incurred greater costs as a result of replacing plaintiff. It is neither the extent by which the defendant is enriched nor the cost to which plaintiff has been put that is the measure of recovery. The measure, rather, is the reasonable value of plaintiff's performance, calculated by the sum for which similar services and materials could have been purchased from one in plaintiff's position at the time performance was rendered. See, Simpson, Contracts (2 ed.) § 203.

Affirmed.